IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

BRIAN DELAUTER, )
)
   Plaintiff, )
) NO. 3:20-cv-00609
v. ) JUDGE RICHARDSON
)
THE NISSAN SUPPLEMENTAL )
EXECUTIVE RETIREMENT PLAN II )
and NISSAN NORTH AMERICA, INC., )
)
   Defendants. )

## **MEMORANDUM OPINION**

Pending before the Court is Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies. (Doc. No. 35, "Motion").[1] Plaintiff has responded. (Doc. No. 60). Defendants have replied. (Doc. No. 62). The Motion is ripe for review.

For the reasons discussed herein, the Motion will be denied.

### **BACKGROUND**[2]

   A. Factual Background

---

[1] The original Memorandum in Support of the Motion to Dismiss (Doc. No. 36) was withdrawn and refiled pursuant to an order from the Magistrate Judge ruling on a joint motion to withdraw. (Doc. Nos. 38, 43). The operative Memorandum in Support of the Motion to Dismiss is found at Docket Number 45. The exhibits attached to the original Memorandum in Support of the Motion to Dismiss were not refiled with the Memorandum, and they are found at Docket Numbers 36-1 and 36-2.

[2] The facts set forth herein are alleged in Plaintiff's Amended Complaint and are accepted as true for purposes of the Motion. The Amended Complaint is the operative complaint in this matter. *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000). To the extent that allegations referred to below are legal conclusions, however, they are not accepted as true but rather are identified as merely what Plaintiff claims, and not what the Court is accepting as true for purposes of the Motion.

1

Plaintiff joined Defendant Nissan in 2011 as the Director of Corporate Services for Nissan Americas. (Doc. No. 31 at ¶ 10). In this role, Plaintiff managed corporate security, facilities, corporate vehicles, real estate, information security, and flight operations. (*Id.*). In June 2017, Plaintiff was promoted to Vice President of Corporate Services and Administration for Nissan. (*Id.* at ¶ 12). In this new role, Plaintiff managed the corporate travel and global flight operations of all executive members of Nissan, Renault, and Mitsubishi. (*Id.*). Plaintiff left Defendants' employment on October 7, 2019. (*Id.* at ¶ 15).

After he left Defendant Nissan's employment, Plaintiff had several relevant communications with employees of Defendant Nissan regarding the payment of his benefits under the Plan. The Court has outlined the relevant communications in chronological order:

- On January 15, 2020, Plaintiff sent an email to Carren Reecer, a Senior Analyst for Global Executive Compensation at Nissan, asking how and when his Plan benefits would be paid. (*Id.* at ¶ 16). Reecer responded and told him that the best way to receive information about his benefits would be to contact Mercer, a third party vendor. (*Id.* at ¶ 17).

- Thereafter, Plaintiff contacted Mercer, and a representative informed Plaintiff that Mercer was still waiting for Defendant Nissan to approve his benefits. (*Id.* at ¶ 18).

- On February 19, 2020, Plaintiff emailed Phillipia Pundor, the Director of Executive Compensation at Nissan, asking whether he needed to take any further actions to receive his Plan benefits. (*Id.* at ¶ 19). Pundor responded six days later that she had not forgotten Plaintiff's question, and that she would respond to his question later. (*Id.* at ¶ 20).

- On May 1, 2020, Plaintiff sent another email to Pundor informing her that his Plan benefits were supposed to be paid that day, and asking how the benefit would be paid. (*Id.* at ¶ 21). Plaintiff did not receive a response to this email. (*Id.* at ¶ 22).

- On May 6, 2020, Plaintiff sent Pundor another email, asking her to call him regarding his Plan benefits. (*Id.* at ¶ 22). Plaintiff did not receive a response to this email. (*Id.* at ¶ 23).

- On May 12, 2020, Plaintiff emailed Reecer and asked if she could check on the status of his claim for benefits. (*Id.* at ¶ 23). Reecer immediately responded and indicated that she would follow up during a meeting with Pundor that day. (*Id.* at ¶ 24). Plaintiff did not receive an email from either Reecer or Pundor on May 13 (the day after they were supposed to have met). (*Id.* at ¶ 25).

- On May 13, 2020, Plaintiff's former counsel thereafter emailed Susan Gritton, who works as corporate counsel for Defendant Nissan, about why his payment under the Plan was delayed. (*Id.* at ¶ 26). The next day, Joe Hession, the Director of Legal and Assistant General Counsel of the Legal Department for Nissan, responded to counsel for Plaintiff. (*Id.* at ¶ 27). Hession explained the payment would be made at the end of the month, not the beginning, but that Plaintiff's payment request was under review. (*Id.*).

- Plaintiff's former counsel followed up with counsel for Defendant Nissan on June 3, 9, and 12. (*Id.* at ¶ 28). Defendant Nissan did not respond to any of these follow-up emails. (*Id.*).[3]

Plaintiff filed the present action on July 16, 2020. On January 21, 2021, Plaintiff filed an Amended Complaint, which sets forth two claims: recovery of benefits (Count I), and breach of contract (Count II).

B. Procedural History

This matter is related to two other matters before this Court, *Vest v. The Nissan Supplemental Executive Retirement Plan II et al*, 3:19-cv-01021, and *Sullivan v. The Nissan Supplemental Executive Retirement Plan II et al*, 3:20-cv-00752. In *Vest*, this Court previously ruled on a Motion to Dismiss or Alternatively, Compel Arbitration and Stay Proceedings, which involved interpreting the same Plan at issue in this case.[4] *Vest v. The Nissan Supplemental Exec. Ret. Plan II*, No. 3:19-CV-1021, 2020 WL 7695261 (M.D. Tenn. Dec. 28, 2020).

In this case, Plaintiff filed a Motion to Convert Defendants' Motion to Dismiss into a Motion for Summary Judgment and to Stay Decision on Defendants' Motion until [Plaintiff] has

---

[3] As noted below, there is an additional relevant communication dated August 21, 2020, after Plaintiff filed this action but before he filed his Amended Complaint.

[4] However, the pending Motion in this matter does not ask the Court to compel arbitration.

a Reasonable Opportunity for Discovery. (Doc. No. 40). In its Order denying the motion, the Court explained that the present Motion did not need to be converted because Defendants' failure-to-exhaust affirmative defense was properly based exclusively on the allegations of the Amended Complaint (and documents set forth therein). (Doc. No. 57 at 7). The Court additionally noted that the only new evidence Defendants offered in support of the Motion was one email and a letter to Plaintiff's Counsel, both of which were referenced in and were integral to the Amended Complaint, but not attached thereto. (*Id.* at 6). The Court left the door open for Plaintiff to argue that the Court should decline to consider these additional documents based on a dispute over their authenticity, validity, or enforceability, but Plaintiff has not so argued. Therefore, the Court will consider Defendants' exhibits when ruling on the Motion.

The first exhibit is the email (referenced above) from Plaintiff's (then) counsel inquiring about Plaintiff's benefits. (Doc. No. 36-1). The second exhibit is a letter dated August 21, 2020 from Defendants' counsel, informing Plaintiff's (current) counsel that the Senior Vice Presidents ("SVPs") of Nissan voted unanimously that Plaintiff's SERP payments were forfeited under the "fraud/disloyalty language in Section 2.3(b) of the SERP II Plan." (Doc. No. 36-2).

**LEGAL STANDARD**

For purposes of a motion to dismiss under 12(b)(6), the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id*. at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary

5

judgment. *Doe v. Ohio State Univ.,* 219 F.Supp.3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

## DISCUSSION

Defendants argue that Plaintiff has failed to follow the Plan's Claims Procedure and has never initiated a claim for benefits, and so this matter should be dismissed because of Plaintiff's failure to exhaust any of his administrative remedies. (Doc. No. 45). Plaintiff responds that he should be deemed exhausted because he made a request for benefits under the terms of the Plan, which Defendants did not timely respond to (within 90 days, as established by the Plan). (Doc. No. 60).

"The administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991).[5] "This is the law in most circuits despite the fact that ERISA does not explicitly command exhaustion." *Ravencraft v. UNUM Life Ins. Co. of Am.*, 212 F.3d 341, 343 (6th Cir. 2000).

An applicable regulation provides that:

> Except as provided in paragraph (l)(2) of this section, in the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

---

[5] In previously ruling on a Motion to Dismiss in the related case *Vest*, the Court noted that if the type of plan before the Court is material or contested, the parties should thoroughly brief their arguments regarding what type of plan it is. (3:19-cv-01021, Doc. No. 34 at 11). Defendants do not argue in briefing the present Motion that the Plan at issue is a top hat plan, as opposed to a typical ERISA plan. Defendants would bear the burden of showing the Court that the Plan at issue is a top hat plan. *Vest v. The Nissan Supplemental Exec. Ret. Plan II*, No. 3:19-CV-1021, 2020 WL 7695261, at *6 n.6 (M.D. Tenn. Dec. 28, 2020). Therefore, the Court will consider the Plan to be a typical ERISA plan (and not a top hat plan) for purposes of this Motion.

29 C.F.R. § 2560.503-1(l)(1). In *Vest*, a related case to the one at hand which interpreted the same Plan document, the Court found that "Defendants have failed to follow the Claims Procedure and provide Plaintiff with a decision on the merits of her claim, and the Court will therefore deem Plaintiff's claim exhausted." 2020 WL 7695261, at *8. The Court in *Vest* ultimately found that:

> Because Defendants failed to follow the Claims Procedure as laid out in the Plan, the Court finds that Plaintiff properly exhausted her rights and can bring a claim in federal court. *Nale v. Ford Motor Co. UAW Ret. Plan*, 703 F. Supp. 2d 714, 720 (E.D. Mich. 2010) ("Defendant thus failed to follow its own Claims Procedure. Pursuant to federal regulations, Plaintiff is 'deemed to have exhausted the administrative remedies available under the plan.' " (quoting 29 C.F.R. § 2560.503-1(l)). Having found that Plaintiff is deemed to have exhausted her administrative remedies under the Plan, the Court does not reach the issue of whether it would be appropriate to excuse Plaintiff from the exhaustion requirement on the grounds that exhaustion would be futile.
>
> As a consequence of Plaintiff properly exhausting her administrative remedies, she is "entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." 29 C.F.R. § 2560.503-1(l)(1). As this action is an available remedy under section 502(a) of the Act, she is entitled to pursue it. And she is entitled to do so irrespective of any obligation the Plan purportedly imposes on her to arbitrate; any such arbitration is among the administrative remedies Plaintiff is deemed to have exhausted. And since she has exhausted them, she is not required to exhaust them again (even partially) by returning to them—such as by returning to the administrative remedies (*i.e.*, Claims Procedure) to arbitrate. The fact that arbitration never occurred here does not serve to suggest that it should occur now; instead, it serves merely to highlight the reason why it never occurred: Defendants simply failed to follow their own Claims Procedure and thus "failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." *Id.* That being so, Plaintiff need not now return to the Claims Procedure disregarded by Defendants.

2020 WL 7695261, at *11.

The parties do not agree on when, if ever, Plaintiff made a claim for benefits (and thus initiated the claims procedure). Defendants assert that Plaintiff never submitted a written claim for benefits to initiate the review process under the Claims Procedure. (Doc. No. 45 at 7). Defendants characterize the communications that Plaintiff sent (described above in the Factual Background

section) as being merely questions and general communications about his Plan benefits. (*Id.* at 7-9). According to Defendants, the only communication that could constitute a request for benefits is the May 13 email from Plaintiff's counsel, and Plaintiff then acted prematurely in filing the present lawsuit 64 days after the email from his counsel, instead of waiting 90 days.[6] (*Id.*). As a result, Defendants assert that Plaintiff has not exhausted his administrative remedies. (*Id.*). Plaintiff asserts that his administrative remedies should be deemed exhausted because the Plan did not provide a reasonable claims procedure and he did not receive a timely decision on his (purported) claim. (Doc. No. 60 at 9). Therefore, in order to determine whether Plaintiff should be deemed to have exhausted his administrative remedies, the Court must determine when (if ever) Plaintiff made a claim for benefits.

The relevant regulation states that "a claim for benefits is a request for a plan benefit or benefits made by a claimant in accordance with a plan's reasonable procedure for filing benefit claims."[7] 29 C.F.R. 2560.503-1(e). In *Vest*, the Court laid out a summary of the entire Claims Procedure set forth the Plan:

> The Plan's Claims Procedure, found in Section 7.12 of the Plan, enumerates the process as (a)-(j), with [an] [a]rbitration [c]lause being (j). The Claims Procedure is essentially summarized as: (a) a claim is presented in writing; (b)-(d) a Claims Official, within a reasonable time, considers the claim and issues a determination;

---

[6] Defendants assert that although (according to them) Plaintiff had not submitted a request for Plan benefits, Defendants began reviewing Plaintiff's eligibility for Plan benefits after the email from Plaintiff's counsel on May 13, 2020. (Doc. No. 45 at 10-11). Plaintiff notes that this fact is not contained in the Amended Complaint or otherwise supported by documents appropriately considered when ruling on this Motion, and the Court will not consider this statement in ruling on this Motion.

[7] Though the Plan uses the word "request" before switching to the word "claim," the regulation states that "a claim for benefits is a request for a plan benefit or benefits made by a claimant in accordance with a plan's reasonable procedure for filing benefit claims." 29 C.F.R. 2560.503-1(e). Therefore, the Court believes the words "request" and "claim" to be interchangeable in this context. The Plan does not provide any explanation of the terms or their meanings or provide the Court with any reason to think that the terms are not interchangeable.

8

> if granted, an appropriate distribution will be made, or if denied, the Claims Official will provide written notice of denial within 90 days; (e) the Participant will have a reasonable opportunity to appeal; (f) review by an Administrative Committee will occur within 60 days, "unless special circumstances require an extension of time for processing" in which case a decision shall be rendered as soon as possible but not later than 120 days; (h) a decision will be given in writing; (i) the determination will be binding on all parties unless a court or arbitrator finds it constituted an abuse of discretion; and (j) "[f]urther review of claims shall be solely through confidential arbitration proceedings."

2020 WL 7695261, at *8 (internal citations to the record omitted). The Plan's procedure for filing benefit claims is as follows:

> The Participant, or a designated recipient or any other person claiming through the Participant shall make a written request for benefits under this Plan. Any claim under the Plan by a Participant, a Surviving Spouse, or any other person shall be governed by the following provisions:
>
>> (a) A claim by a Participant, Surviving Spouse or any other person shall be presented to the Claims Official appointed by the Administrative Committee in writing within the maximum time permitted by law or under the regulations of the Secretary of Labor or his delegate pertaining to claims procedures.

(Doc. No. 31 at 28). The parties do not point the Court to any additional relevant provisions of the Plan, and the Plan does not appear to contain definitions for any of the relevant phrases or terms. Therefore, the entire process for making a claim for benefits must be divined from the words of this quoted provision.

This provision of the Plan is susceptible to two alternative readings, and therefore appears to be ambiguous. Defendants assert that the provision should be read as requiring a claimant to make a written request for benefits, which *the claimant* should present to the Claims Official appointed by the Administrative Committee. (Doc. No. 62 at 2). Plaintiff does not dispute that the provision should be read as requiring a written request for benefits. He asserts, however, that the provision does not make *the claimant* (as opposed to an appropriate agent or employee of Defendants) responsible for presenting the claim to the Claims Official, inasmuch as the Plan is

9

ambiguous regarding who should present the claim to the Claims Official. (Doc. No. 60 at 10).[8] The Court finds that both of these readings of this provision of the Plan are reasonable, meaning that the provision is actually ambiguous.

Before determining the appropriate interpretation of the Plan in light of this ambiguity, the Court must determine whether to (i) construe the Plan against the drafter (Defendants), or (b) defer to Defendants' interpretation of the Plan. When an ERISA plan administrator is granted discretionary authority to determine eligibility for benefits and to construe the terms of the Plan, a district court should apply "the highly deferential arbitrary-and-capricious standard of review." *Canada v. Am. Airlines, Inc. Pilot Ret. Ben. Progra*m, 572 F. App'x 309, 312 (6th Cir. 2014). Notably, "[t]he plan administrator bears the burden of proving that the arbitrary and capricious standard applies." *Shelby Cty. Healthcare Corp. v. Majestic Star Casino, LLC*, No. 06-2549, 2008 WL 782642, at *3 (W.D. Tenn. Mar. 20, 2008), *aff'd sub nom. Shelby Cty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355 (6th Cir. 2009). Defendants have made no argument here regarding what standard of review should apply and whether they should receive the deference afforded them under the arbitrary and capricious standard.

The Plan does appear to grant discretion (including sole discretion to determine issues relating to eligibility to participate in the Plan and to determine the amount and kind of benefits payable to claimants) to the Administrative Committee, stating that:

---

[8] Defendants assert that Plaintiff's position in briefing conflicts with what he pled in his Amended Complaint. In the Amended Complaint, Plaintiff pled that he "made a timely written claim for benefits, which was presented to the Claims Official appointed by the Administrative Committee within the maximum time permitted by law or under the regulations of the Secretary of Labor or his delegate pertaining to claims procedures, satisfying provision 7.12(a) of the Plan." (Doc. No. 31 at ¶ 31; Doc. No. 62 at 3). However, this allegation in the Amended Complaint does not specify that *Plaintiff* was the one who presented the claim to the Claims Official. The use of the passive voice ("was presented") precludes any indication of *who* presented the claim to the Claims Official. The Court therefore does not find Plaintiff's position in briefing to contradict his pleadings.

The Administrative Committee shall enforce the Plan in accordance with its terms, shall interpret and construe the Plan in its sole discretion, and shall be charged with the general administration of the Plan and the determination of all issues arising thereunder, except as otherwise provided in the Plan. The Administrative Committee shall have the powers, duties, and discretion necessary to accomplish those purposes, including but not by way of limitation, the discretionary authority to:

> (a) To determine in its sole discretion all issues relating to eligibility to participate and vesting in accordance with the Plan,
>
> (b) To determine, compute and certify in its sole discretion the amount and kind of benefits payable to Participants and their beneficiaries,
>
> (c) To maintain all necessary records for the administration of the Plan,
>
> (d) To provide for disclosure of information and provide reports and statements to Participants or beneficiaries,
>
> (e) To make and publish such rules for the administration of the Plan as are not inconsistent with its terms,
>
> (f) To engage actuaries, attorneys, accountants, appraisers, brokers, consultants, administrators, physicians or other firms or persons and (with its officers, directors, and employees) to rely upon the reports, advice, options or valuations of any such persons, except as required by law, whenever necessary or appropriate to carry out its duties under the Plan,
>
> (g) To interpret and construe in its sole discretion the Plan and all documents related thereto, including any rules of the Plan, and to determine all questions and make findings of fact as necessary to make any determinations and decisions in the exercise of such discretionary power and authority, and
>
> (h) To appoint claims and review officials to conduct claims procedures as provided in Section 7.12 and to determine entitlement to Plan benefit payments and distributions of Participants, Surviving Spouses, and all other persons.
>
> Every finding, decision, and determination made by the Administrative Committee and the Chairman of the Board or the Chief Executive Officer of the Company or Affiliated Company, or his designee, shall, to the full extent permitted by law, be final and binding upon all parties, except to the extent found by a court of competent jurisdiction to constitute an abuse of discretion.

(Doc. No. 31 at 26-27).

Though arbitrary and capricious review should generally be used when the Plan invests discretion in a plan administrator, a court should eschew that standard and instead conduct a *de novo* review when an entity other than the plan administrator has exercised that discretion.[9] The Sixth Circuit has explained that:

---

[9] It likewise appears appropriate for the district court to conduct a *de novo* review when no decision at all has been rendered on a claim. As explained in *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839 (6th Cir. 2000):

> While conceding that this Plan language, viewed in isolation, dictates application of the deferential 'arbitrary and capricious' standard, [the plaintiff] argues that the *de novo* standard should apply here by virtue of the [the Employee Benefit Committee's] alleged failure to timely issue a decision following our prior remand of this matter to that body for reconsideration. As [the plaintiff] points out, if a plan administrator fails to timely decide an appeal of a claim denial, the challenged claim 'shall be deemed denied on review,' 29 C.F.R. § 2560.503–1(h)(4), and the claimant may then 'bring a civil action to have the merits of his application determined, just as he may bring an action to challenge an outright denial of benefits.' Although neither the regulation nor *Russell* addresses the applicable standard of review in such circumstances, there is undeniable logic in the view that a plan administrator should forfeit deferential review by failing to exercise its discretion in a timely manner. In any event, given our ruling on the merits of the [the Employee Benefit Committee's] denial of benefits, we need not decide whether the [the Employee Benefit Committee] timely issued its decision on remand, nor whether any failure to timely decide [the plaintiff's] appeal should trigger a less deferential standard of review.

*Id.* at 846 (internal citations omitted); *see also Buck v. Kraft Food Glob., Inc.*, No. 3:04-0562, 2007 WL 433240, at *8 (M.D. Tenn. Feb. 2, 2007) (ruling using the *de novo* standard, despite lacking a denial letter or adverse determination, when the plaintiff had exhausted his administrative remedies); *Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1251 (D. Utah 2016) ("Serious procedural irregularities can require the court to apply a *de novo* standard of review where deferential review would otherwise be required. That said, there is not a serious procedural irregularity requiring *de novo* review every time the plan administrator's conclusion is contrary to the result desired by the claimant. Instead, *de novo* review may be appropriate if the benefit-determination process did not substantially comply with ERISA regulations. For instance, the Tenth Circuit has held that *de novo* review is appropriate where the administrative appeal was deemed denied because the administrator made no decision to which a court may defer. The Tenth Circuit has also applied *de novo* review where the plan administrator failed to timely respond to a beneficiary's appeal." (footnotes omitted and cleaned up)). As discussed herein, the Court does not decide at this juncture whether the August 21, 2020 letter from Defendants' counsel communicating the decision of the SVPs was a decision on Plaintiff's claim.

> [Even] when the plan documents confer discretionary authority on the plan administrator, when the benefits decision "is made by a body other than the one authorized by the procedures set forth in a benefits plan," federal courts review the benefits decision *de novo*. *Sanford*, 262 F.3d at 597 (adopting the reasoning of *Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 229 (2d Cir.1995)). Where a plan administrator does not make the benefits decision, the plan administrator has not exercised its discretionary authority, and therefore a deferential standard of review is not justified. *See id.* at 596–97 ("When an unauthorized body that does not have fiduciary discretion to determine benefits eligibility renders such a decision, . . . deferential review is not warranted.").

*Shelby Cty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 365 (6th Cir. 2009); *see also Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 597 (6th Cir. 2001) (reviewing case law from other circuits and finding that "the court did not err by reviewing [the defendant's] decision *de novo*, rather than under the more deferential 'arbitrary and capricious' standard . . . deferential review under the 'arbitrary and capricious' standard is merited for decisions regarding benefits when they are made in compliance with plan procedures. When an unauthorized body that does not have fiduciary discretion to determine benefits eligibility renders such a decision, however, this deferential review is not warranted."); *Parkridge Med. Ctr., Inc. v. CPC Logistics, Inc. Grp. Ben. Plan*, No. 1:12-CV-124, 2013 WL 3976621, at *6 (E.D. Tenn. Aug. 2, 2013) (discussing *Majestic Star* and applying *de novo* review when entity other than the entity with sole discretion to interpret plan documents issued decision and conducted appeals); *Wintermute v. The Guardian*, 524 F. Supp. 2d 954, 960 (S.D. Ohio 2007) ("ClaimSource is an unauthorized body without discretionary authority to terminate benefits under the plan, [so] its decision to terminate [Plaintiff's] disability benefits receives *de novo* review.").

The Court has not yet been asked to decide whether a decision on Plaintiff's claim (if one in fact was validly presented) was rendered at all, and the Court will not do so herein.[10]

---

[10] The Court will not determine at this juncture whether this letter constitutes a decision to deny Plaintiff benefits for purposes of ERISA, as Defendants assert. (Doc. No. 45 at 19-20). The Court

Nevertheless, it is relevant that the document Defendants identify as announcing a "decision" indicates that the SVPs of Nissan—and not the Administrative Committee—voted to find Plaintiff ineligible to receive benefits. The Plan nowhere equates the SVPs with the Administrative Committee, and there is no indication that the SVPs are delegated the Administrative Committee's discretion under the Plan. In fact, in referring to the "sole discretion" of the Administrative Committee to determine issues relating to eligibility to participate in the Plan and to determine the amount and kind of benefits payable to claimants, the Plan indicates that the SVPs affirmatively *lack* such discretion. The Court has previously discussed the confusion regarding the role of the SVPs in the Claims Process and has indicated that their involvement in the Claims Procedure is not contemplated by the Plan:

> The Court is confused by Defendants' counsel's reference to Section 2.3 prescribing "a procedural step" and a type of review that can overturn an initial decision of denial. Section 2.3 appears in an entirely separate section of the Plan than the Claims Procedure laid out in Section 7.12; rather than discussing Claims Procedure, it prescribes certain obligations (of, among other things, nondisclosure and loyalty) of Plan participants, as well as consequences for violating such obligations and a mechanism for deciding whether any alleged violations have in fact occurred. The part of Section 2.3 that counsel appears to have been referencing—the second paragraph of subsection 2.3(b)—states:
>
>> Accordingly, if the Participant is found by a majority vote of the Senior Vice Presidents of the Company to have violated in any way the restrictions and requirements imposed on him by any such nondisclosure and confidentiality agreement and provisions above, or to have engaged in any act of fraud against or disloyalty to the Company (as defined for purposes of Section 2.3(b), or to have disparaged the Company (as defined for purposes of Section 2.3(b)) and/or its management, or if the Participant accepts any position as an employee of or a consultant to any Competing Company, then the Company, notwithstanding any other provision herein, will have

---

finds that the claim is exhausted because Defendants did not provide a response within the 90 day time period, and the Court currently does not need to decide whether this communication outside of the 90 day time period constituted a denial. As this has been an issue in the related cases, the Court will expect fulsome briefing on this topic if it becomes relevant or contested at a later stage in this litigation.

> no further obligation to make any payment of any benefit deemed accrued hereunder to the Participant or to the Participant's designated beneficiary or estate.
>
> (*Id.* at 10). Thus, subsection 2.3(b) indicates that if a Plan participant is suspected of having committed any such violation, the SVPs must vote to determine whether she has in fact committed such violation(s), in which case she is effectively disqualified from receiving any further payment under the Plan. Beyond suggesting that a finding (by majority SVP vote) of such disqualifying violation(s) could occur at any time while the Company otherwise has "further obligation to make . . . payment"—*i.e.*, has not made all payments otherwise due to the Plan participant—this subsection otherwise provides no information at all (and certainly no details) on when or how this vote should occur. And Section 3.4 of the Plan provides that payment under the Plan is made in a single lump sum paid "during the month following the six month anniversary of the last day worked." (*Id.* at 12). The time of payment thus identified naturally would arrive after the institution of the Claims Procedure of Section 7.12—after the making, and perhaps even after the granting or denying, of a claim under the Claims Procedure.
>
> The subsection thus indicates that the SVP vote does not necessarily have to be made at the outset of the Claims Procedure for a participant's claim for benefits and could instead be made after an initial determination of a claim. The language of this provision (and its location in the Plan), indicate to the Court that it is not part of the Claims Procedure, but rather a different avenue that Defendants can use at any time (even after a decision to grant benefits) to deny benefits to a Plan beneficiary deemed to have committed a violation of the kind referred to in subsection 2.3(b).

*Vest*, 2020 WL 7695261, at \*\*9-11. Therefore, Defendants have failed to carry their burden of showing the Court that they are entitled to arbitrary and capricious review, because it is apparent that an entity other than the Administrative Committee were exercising (or at least purporting to exercise) the discretion referenced in the Plan. As a result, the Court finds that it should undertake a *de novo* review when construing the Plan document.

"Under general contract principles, where the Court is conducting a *de novo* review, 'any ambiguities in the language of the plan [must] be construed strictly against the drafter of the plan.'" *Heimer v. Companion Life Ins. Co.*, No. 1:15-CV-338, 2016 WL 10932755, at \*4 (W.D. Mich. Aug. 12, 2016), *aff'd*, 879 F.3d 172 (6th Cir. 2018) (citing *Regents of Univ. of Mich. v. Emps. of*

15

*Agency Rent–A–Car Hosp. Ass'n*, 122 F.3d 336, 340 (6th Cir. 1997)). As the Court has previously discussed, the Plan's provision regarding the process for making a claim is ambiguous and subject to two reasonable interpretations. The Court therefore can (and will) construe the Plan against the drafter (Defendants).

Applying *de novo* review and construing the Plan against the drafter, the Court finds that it should adopt Plaintiff's interpretation of how to make a claim under the Plan (discussed above). The Plan indicates only that "the Participant shall make a written request for benefits under this Plan." (Doc. No. 31 at 28). The Plan then lays out the Claims Procedure, indicating that a claim "shall be presented to the Claims Official appointed by the Administrative Committee in writing." (*Id.*). The Plan does not clarify *who* should present this claim in writing to the Claims Official. Because the Claims Official is not defined in the Plan and there is no indication of how a claimant could find out who the Claims Official is, it is a reasonable interpretation of the Plan to conclude that Defendants (or, at least, someone other than the claimant) was the entity tasked with presenting the claim to the Claims Official (whose identity *would* be known to Defendants). The Court fully understands Defendants' contrary argument,[11] but the argument must be resolved against Defendants as the drafter—*i.e.*, the party responsible for what indisputably is a lack of clarity and precision in the written terms of the Claims Procedure. To be frank, if Defendants want a different

---

[11] One argument in Defendants' favor is that the Claims Procedure must be directing *Plaintiff* to present the claim to the Claims Official, because otherwise Plaintiff would have no idea to whom he should present his claim. There is something to this, but on the other hand: (i) as far as the Court can see from the record, even if Plaintiff knew he had to present his claim to the Claims Official, Plaintiff would have no idea to whom to present his claim because the identity of the Claims Official would be entirely obscure to him; (ii) Plaintiff should not be required to try to ferret out the identity of the Claims Official rather than just conveying his claim to any agent or employee of Defendants who ostensibly appears appropriate to receive it given his or her position with Defendants; and (iii) it is not enough for there to be merely something to the arguments in favor of the drafters' (Defendants') position, which must be rejected by the Court in the event of an ambiguity in the claims procedure, which as discussed exists in the present case.

outcome in the future, they would be well-advised to substantially tighten up both the articulation and the execution (in particular cases) of their Claims Procedure.

Therefore, the Court must determine whether the emails sent by Plaintiff constituted a "claim," *i.e.*, "a written request for benefits."[12] A court in this circuit has faced the question of what constitutes a claim under a plan with language ("the employee may make a claim in writing to the Plan Administrator") similar in vagueness to the language at issue here ("Participant shall make a written request for benefits under this Plan"):

> However, neither the Plan nor judicial precedent provide guidance as to what type of writing qualifies as a "claim." Black's Law Dictionary defines a claim as "[t]he assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional." (8th ed.2004). Under the circumstances, the Court concludes that the October 24, 2006, letter was a claim for severance benefits under the Plan. The letter identified the Plan, including the fact that it was governed by ERISA, and asserted that the severance package being offered to [Plaintiff] was not in conformity with the amount of severance to which she was entitled under the Plan. The letter stated that [Plaintiff] was entitled to 46.5 weeks of severance pay under the plain language of the Plan and that nothing in [Plaintiff's] personnel file indicated she was not eligible under the Plan. Through this information, the letter reasonably apprised its recipients that [Plaintiff] felt entitled to benefits under the Plan and that she was invoking her right to those benefits. Thus, by apprising [Defendant] of her belief that she qualified for benefits under the Plan, [Plaintiff] asserted an existing right; as such, the letter was a "claim" for the purpose of exhausting administrative remedies.

*Robberson v. Access Bus. Grp., LLC*, No. 1:07-CV-882, 2008 WL 2167986, at *2 (W.D. Mich. May 21, 2008).[13] Here, Plaintiff's emails (starting with his first email) similarly apprised

---

[12] Defendants conceivably could maintain that even if the answer to this question is yes, and even if Defendants are the ones responsible for presenting a cognizable claim in the hands of the Claims Official, a claim should not be deemed cognizable unless it is conveyed to an agent or employee (even if not the Claims Official) who is appropriate to initially receive a claim from a claimant. Even if Defendants took that position, Defendants do nothing to establish that if Plaintiff's emails do make a "claim," *i.e.*, a written request for benefits, they were not sent to an agent or employee of Defendants appropriate to receive claims from claimants.

[13] The Court notes that many of the cases cited in Defendants' Memorandum in Support of the Motion are inapposite to interpreting the Plan document in this case because they involved ERISA

Defendants that Plaintiff was invoking his right to his benefits, by referencing the Plan and asking how he would receive his benefits. Therefore, the Court finds that Plaintiff made a claim for benefits in his first email to Defendants, which was reiterated in subsequent emails from both Plaintiff and his counsel.[14] And Defendants did not substantively respond to Plaintiff's repeated communications about his claim, except for sending a delayed letter (outside the relevant 90 day window) indicating that the SVPs had voted to deny Plaintiff's claim. Therefore, Plaintiff has

---

plans with specific processes for making a claim. For example, in *Andrews v. Solar Turbines, Inc.*, No. 10-CV-1435-H (NLS), 2010 WL 11684785, at *3 (S.D. Cal. Sept. 22, 2010), the court found that the relevant plan specifically enumerated claims procedures, including submitting a document in writing to a particular person at a particular address provided in the Plan Summary. The court determined that the relevant letter from counsel did not meet these criteria, and it distinguished the specific nature of the plan at issue from the general language in *Robberson*. *Id.* at *3; *see also Potter v. ICI Americas Inc.*, 103 F. Supp. 2d 1062, 1067 (S.D. Ind. 1999) (noting that an attorney's letter might suffice if reasonable procedures for filing a claim were not established).

[14] Defendants cite the answers to a few frequently asked questions on the Department of Labor's website. The Department of Labor indicates that "[i]f an individual asks a question concerning eligibility for coverage under a plan without making a claim for benefits, the eligibility determination is not governed by the claims procedure rules" and "[t]he regulation does not govern casual inquiries about benefits or the circumstances under which benefits might be paid under the terms of a plan." *Benefit Claims Procedure Regulation FAQs*, U.S. Dept. of Labor, https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/faqs/benefit-claims-procedure-regulation (last accessed June 18, 2021). The Court is able to take judicial notice of the contents of a government website. *See e.g.*, *Demis v. Sniezek*, 558 F.3d 508, 513 n.2 (6th Cir. 2009) (taking judicial notice of contents of the Bureau of Prisons' website); *Oak Ridge Envtl. Peace All. v. Perry*, 412 F. Supp. 3d 786, 810 (E.D. Tenn. 2019) ("Information taken from government websites is self-authenticating under FED. R. EVID. 902, and courts may accordingly take judicial notice of the information found on these websites."). And the Court understands, consistent with this statement from the Department of Labor, that asking a question (or, to put it only slightly differently, making an inquiry) concerning eligibility does not constitute a claim and that a claim must be made. But Defendant here has really just begged the question: did Plaintiff make a "claim"? This is the question the Court must answer, while keeping in mind that a mere question or inquiry does not constitute a "claim," inasmuch as a *question* or *inquiry* regarding eligibility for benefits by definition falls short of making a *request* or a *demand* for benefits.

Plaintiff argues that his emails were not a "request for information" or a "casual inquiry," because he was not seeking information regarding his eligibility, and Defendants should have known that he was seeking to have his benefits paid. (Doc. No. 60 at 13-15). The Court agrees with Plaintiff, as discussed above, and finds that Defendants should have construed these written communications from Plaintiff as a (written) request for benefits and thus a claim.

exhausted his administrative remedies. *See e.g.*, *Dobi v. Winn-Dixie Emps. Profit Sharing Ret. Program*, No. 608CV1386ORL22GJK, 2008 WL 11335079, at *2 (M.D. Fla. Dec. 1, 2008) ("While it is not appropriate at this stage to consider matters outside the pleadings, it would be elevating form over substance to find that Plaintiff failed to satisfy her duty to exhaust administrative remedies. Plaintiff contends that she made specific requests in writing for the necessary documents to initiate a benefit claim under the Program and that Defendant never answered Plaintiff's requests."); *Linder v. BYK-Chemie USA Inc.*, 313 F. Supp. 2d 88, 93 (D. Conn. 2004) ("[Plaintiff] filed suit on November 4, 2002, well over 90 days after his claim for benefits was filed, having received no written decision from the Committee. The ERISA regulations are clear that claimants are 'deemed to have exhausted administrative remedies' in such circumstances.").

For the reasons discussed herein, the Court finds that Plaintiff has exhausted his administrative remedies, and the Court will not dismiss this action.[15]

## **CONCLUSION**

In the view of the Court, Defendant will simply need to handle these matters more meticulously from the claim procedure-drafting stage onward, in order to saddle a plaintiff with the consequence of failure to exhaust administrative remedies.

For the reasons discussed herein, the Court will deny the Motion.

---

[15] As a result of this finding, the Court does not need to consider Plaintiff's alternative arguments: 1) that Defendants had a duty to respond/engage Plaintiff in a dialogue about his benefits, 2) that the Plan does not have a proper appeals process, and 3) futility. The Court also will not address whether remand is an appropriate remedy at this time. Defendants have only discussed remand in their Reply brief, and the Court therefore finds the argument waived. *Malin v. JPMorgan*, 860 F. Supp. 2d 574, 577 (E.D. Tenn. 2012) ("It is well-settled that a movant cannot raise new issues for the first time in a reply brief because consideration of such issues 'deprives the non-moving party of its opportunity to address the new arguments.'" (citation omitted)).

An appropriate order will be entered.

_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE